UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| YOLANDA NORRIS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 07-303-DCR |
| ) | |
| V. ) | |
| ) | |
| LIFE INSURANCE COMPANY OF ) | **MEMORANDUM OPINION** |
| NORTH AMERICA, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This is an action involving a long-term disability ("LTD") benefits claim governed by the Employee Retirement Income Securities Act ("ERISA"). 29 U.S.C. § 1001 *et seq*; *see Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 479 (6th Cir. 2007) (outlining the test for determining the existence of an ERISA plan). This Court's subject matter jurisdiction is based on the Plaintiff's claimed ERISA violation. 29 U.S.C. § 1132(e)–(f).

Plaintiff Yolanda Norris ("Norris") and Defendant Life Insurance Company of North America ("LINA") have each filed a motion for judgment in their favor. [Record Nos. 18, 21] Through this action, Norris seeks to reverse LINA's decision to terminate her LTD benefits. She asserts that the weight of the evidence supports her position that she was, and still is, unable to perform her previous occupation. Therefore, she contends LINA's decision to terminate her LTD benefits was arbitrary and capricious and should therefore be vacated. Conversely, LINA contends that its decision was made after a reasoned, deliberative process in which medical

experts opined that Norris' medical record did not support restrictions of no return to her light duty occupation. Accordingly, LINA seeks a judgment in its favor affirming its decision to terminate Norris' LTD benefits.

For the reasons discussed below, the Court will deny Norris' motion and will grant the relief sought by LINA.

**I.     BACKGROUND**

Norris was employed as an insurance agent by AEGON USA, Inc. The exact nature of Norris' daily work is disputed by the parties,[1] but it can be summarized as a mixture of office work and door-to-door insurance sales. [Record No. 18, p. 1; Record No. 21, p. 3] Norris was covered by the group insurance plan ("Plan") issued to her employer by LINA. The relevant terms of the Plan provide:

**Definition of Disability**

The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:

1. unable to perform all the material duties of his or her Regular Occupation or a Qualified alternative; or
2. unable to earn 80% or more of his or her Index Covered Earnings.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:

---

   1.   In her documentation interview, Norris told LINA that she spent two days a week sitting in the office doing office work, and spent the other three days going door-to-door selling insurance and collecting payments. [Tr., p. 113] However, in her brief Norris also adds that her job required her to "lift heavy promotional material," a fact which LINA disputes. [See Record No. 18, p. 1, and Record No. 21, p. 3.]

1. unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or
2. unable to earn 80% or more of his or her Index Covered Earnings.

**Disability Benefits**

The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. The employee must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy. He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid. The Disability Benefit is shown in the Schedule of Benefits.

[Administrative Transcript, pp. 180, 185 ("Tr., p. ___")]

Norris alleges that she began to suffer from pain in her lower back, left leg, and both feet at some point prior to 2005. [Tr., p. 113] MRIs of Norris' back and hips conducted in January and February of 2005 gave no clear indication of the cause of her pain. [Tr., pp. 223, 480] On April 9, 2005, Norris claims that she was no longer able to continue working due to significant pain in her lower back and heels. On April 12, 2005, Dr. Richard Skrip ("Skrip") diagnosed this pain as resulting from heel spurs.[2] [Record No. 18, p. 1]; [Tr., p. 573] Norris subsequently was granted short-term disability ("STD") benefits by LINA effective April 19, 2005, as a result of heel spurs. [Tr., pp. 602–03]

---

2. Heel spurs are small, bony growths on the heel, which may develop when the ligament that connects the heel bone to the bones in the toes becomes inflamed. Symptoms may include pain or tenderness over the weight-bearing part of the bottom of the heel, and/or a bump that can sometimes be felt when the area is touched. A heel spur can be diagnosed by looking at an X-ray, and if a spur is found to be the main cause of the patient's heel pain, surgery or injections may be needed. *See* http://www.webmd.com/a-to-z-guides/bone-spur-topic-overview; click on the link to "heel spurs."

To relieve the pain caused by the heel spurs, Norris underwent an operation of her left heel on July 20, 2005 and an operation of her right heel on November 10, 2005. [Tr., pp. 351–52, 548–49] The recovery time for this surgery was estimated by Norris' doctor and LINA's Nurse Case Manager to be approximately eight weeks. [Tr., p. 91] During the period between surgeries, Norris was unable to return to work, and LINA approved her LTD benefits. [Tr., pp. 420–22]

In early March (nearly four months after her second heel surgery) LINA began looking into why Norris had not returned to work, and Dr. Paul Seiferth was employed by LINA to review Norris' medical record. [Tr., pp. 34–35, 342–45] He opined that the medical evidence in her record did not support the restrictions and limitations of no work. [Tr., pp. 34–35] Thereafter, on March 16, 2006, LINA informed Norris that her LTD benefits were being terminated effective March 5, 2006.[3] [Tr., pp. 334–36] Subsequent administrative appeals were denied on October 21, 2006, and again on May 22, 2007. [Tr., pp. 205–07, 258–61]

On August 7, 2007, Norris filed a complaint in Owsley Circuit Court claiming that LINA wrongfully terminated her LTD benefits in violation of ERISA. [Record No. 1, p. 5–6] Thereafter, the case was removed to this court. [Record No. 1, p. 7]

## II. LEGAL STANDARD

### A. The Standard of Review

---

3. The LTD benefits paid to Norris at the end of each month represented benefits due from the 6th day of the current month through the 5th day of the next month. Therefore, by terminating Norris' LTD benefits effective March 5, 2006, on March 31st, Norris would not receive benefits for the period of March 6, 2006 through April 5, 2006. [Tr., p. 420]

-4-

Generally, a challenge to an ERISA denial of benefits is reviewed *de novo*. *Smith v. Bayer Corp. Long Term Disability Plan*, 275 Fed. Appx. 495, 504 (6th Cir. 2008) (unpublished) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, if the Plan grants the Administrator the discretionary authority to determine benefit eligibility, an arbitrary and capricious standard of review is applied. *Id.* (citing *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 291–92 (6th Cir. 2005)). Therefore, the initial issue to be addressed is whether the Plan vests discretionary authority in the Administrator in this case.

When determining if a Plan vests discretionary authority in an Administrator, courts are directed to "focus on the breadth of the administrators' power – their authority to determine eligibility for benefits or to construe the terms of the plan." *Perez v. Aetna Life Ins., Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (internal citations and quotations omitted). While there is no requirement that "magic words" be present in the Plan, there must be a "clear grant of discretion to the administrator to determine benefits or interpret the plan" in order to trigger the arbitrary and capricious standard of review. *Id.* (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994)). Absence of a clear grant of discretion in the Plan dictates that the Court apply a *de novo* standard of review. *Tiemeyer v. Community Mut. Ins., Co.*, 8 F.3d 1094, 1099 (6th Cir. 1993).

The pertinent language the Plan can be found in the *Description of Benefits* section under the heading entitled *Disability Benefits*. [Tr., p. 185] The description provides, in relevant part, that:

> The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this policy. . . . He or she must provide the

>Insurance company, at his or her own expense, satisfactory proof of Disability before benefits will be paid.
>
>The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

[*Id.*] This circuit has held that language similar to that contained in the Plan clearly grants discretion to the Administrator. *See Perez*, 150 F.3d at 555–58 (holding that a Plan can clearly grant discretion to the Administrator even if the language does not specifically state to whom the proof of disability must be satisfactory). Accordingly, because the language in the Plan grants discretion to the Administrator, an arbitrary and capricious standard of review shall be applied.

An arbitrary and capricious standard is the least demanding form of judicial review. *Rose v. Hartford Fin. Servs. Group*, 265 Fed. Appx. 444, 449 (6th Cir. 2008) (unpublished) (citing *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 710 (6th Cir. 2002)). When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. *Id.* Therefore, if the decision is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence," the decision will be upheld. *Glenn v. Metro Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006).

Although this standard is highly deferential, "the arbitrary-and-capricious standard . . . does not require us merely to rubber stamp the administrator's decision." *Id.* (quoting *Jones v. Metro Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004)). Rather, this Court reviews "the quality and quantity of the medical evidence on both sides of the issue" in order to determine whether the administrator's decision was arbitrary and capricious. *Id.* (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003)). Finally, the "ultimate issue in an

ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002). Therefore, the Administrator's decision will be overturned only if the decision was arbitrary, capricious, not supported by substantial evidence, or contrary to the law. *Moberly v. MetLife*, 2007 U.S. Dist. LEXIS 42294, at *11 (ED KY June 8, 2007).

Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). While significant deference is given, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). If supported by substantial evidence, the Administrator's decision must be affirmed even if the Court would decide the case differently and even if the Plaintiff's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin,* 475 F.3d at 730; *Longworth v. Comm'r*

*Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

The scope of analysis employed in reviewing motions for judgment in ERISA actions in this Circuit is neither that of a motion to dismiss nor a motion for summary judgment. Rather, the scope of analysis falls somewhere in between the two. *Wilkinson v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

### B.     Conflict Of Interest

Although not raised by Norris in her brief, the Court must also determine whether a conflict of interest is present. "Where a plan authorizes an administrator 'both to decide whether an employee is eligible for benefits and to pay those benefits,' it creates 'an apparent conflict of interest.'" *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007) (citation omitted). The existence of a conflict of interest does not alter the legal standard in this case; however, it is a factor that must be taken into consideration in determining whether LINA's decision was arbitrary and capricious. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292–93 (6th Cir. 2006). In evaluating this conflict, the Court must "look[] to see if there is evidence that the conflict in any way influenced the plan administrator's decision." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).

As Norris provides no evidence that LINA's conflict of interest actually motivated its denials of benefits, the mere existence of this conflict does not render its decision arbitrary and capricious. *See Cooper*, 486 F.3d at 165 (noting that "Sixth Circuit case law requires a plaintiff not only to show the purported existence of a conflict of interest, but also to provide 'significant

evidence' that the conflict actually affected or motivated the decision at issue."). Accordingly, there is no evidence that the conflict had any affect the Administrator's decision to terminate Norris' LTD benefits.

### III. LEGAL ANALYSIS

Norris claims that she is entitled to a continuation of her LTD benefits because she is disabled under the Plan's definition; that is, she is unable to perform her the duties of her prior job due to pain in her feet and lower. [Record No. 18, p. 3] During the relevant time period Norris was primarily treated by three medical professionals – Dr. Richard Skrip, a podiatrist, who continued to treat her for foot pain; Dr. Stephen Howard, a chiropractor, who treated her lower back pain; and Kim McIntosh, a nurse practitioner, who coordinated her treatment. [Record No. 18, pp. 2–3]

#### A. Initial Termination of LTD Benefits

LINA terminated Norris' LTD benefits on March 16, 2007, after Dr. Seiferth concluded that the medical evidence in the record fails to support the restrictions and limitations of no work based on the physical examination findings. [Tr., pp. 34–35] In his review, Dr. Seiferth specifically noted the following:

> **Outstanding Issues and Follow-up Dates**
>
> STRATEGY/RECOMMENDATIONS/PLAN Continued [limitations and restrictions] of no work is not supported by the medical currently on file as documented below. [Office visit] from 12/20/06 indicates surgical site well healed [without] [signs or symptoms of] infection. She was noted to be making satisfactory progress was to remain on limited weight bearing for the next few days. Notes 1/31/06 indicate she is doing fine with some soreness in left heel. [No Visual Symptoms/Within Normal Limit] skin edges well coapted negative edema, negative ecchymosis[,] negative clinical sign of infection. She was noted

to be making satisfactory progress although Dr. Skrip indicated she was to continue off work per separate note. [Nurse Case Manager]/provider call was made and [message] relayed form [sic] the doctor who was in surgery was that [claimant] still had pain, swelling and numbness in her feet and needed to keep them elevated. When it was discussed that theses [sic] findings were not in the 1/06 notes it was revealed that [claimant] was seen again 3/2/06. Notes were faxed and [claimant] [complained of] some numbness in foot. Exam was [No Visual Symptoms/Within Normal Limit]. Surgical site was well healed [without] [signs or symptoms] of infection and negative edema and redness. The assessment of post surgical fibrosis was made[;] however[,] there was no mention of [x-ray] or [physical therapy] recommended for scar massage. [Claimant] was instructed to stay off work for 6 more weeks.

**Strategy**

Medical fails to Support [Restrictions] and [Limitations] of no work based on [physical examination] findings.

[Claimant] is a 41 [year old] female who last worked as an insurance agent with incur date of 4/12/05. [Claimant] stopped working due to heel pain of 1 [year] duration due to heel spurs 726.23. She had surgical excisions on left 7/20/05 and right 11/10/05. [Claimant] has co-morbid [history] of left groin nerve root impairment, left leg pain. MRI hips 2/5/05 unremarkable. MRI L spine 1/8/05 showed mild bulging at L5-S1. [Nerve Conduction Velocity] arms 5/6/05 [within normal limit]. Treating providers have been Dr. Anand cardiology with no [follow up] since 7/12/05. Dr. Tikhtmad neurology with [last office visit] 5/6/005 who indicated [claimant] was a no show for [follow up] and was never taken off work and can [return to work]. Dr. Howard, chiropractor has not seen [claimant] since 9/13/05. Dr. Skirp [sic] [Doctor of Podiatric Medicine] performed her heel spur surgery and is the doctor who indicates that [claimant] is not ready to [return to work].[4]

---

4. Bracketed words have been substituted in place of the medical abbreviations used in the record in order to increase readability. Commonly understood abbreviations were left as abbreviations. *See* MediLexicon, at http://www.medilexicon.com/medicalabbreviations.php. Additionally, the abbreviation "Cx" is used throughout LINA's documents to refer to the claimant. Therefore, the word "claimant" has been substituted for the abbreviation "Cx" in the text.

[Tr., p. 35] Upon completing his evaluation of the medical record, Dr. Seiferth concluded that physical examination findings fail to support the restrictions and limitations of no work. [Tr., p. 36] Based on this conclusion, LINA terminated Norris' LTD benefits. [Tr., pp. 334–36]

ERISA requires that the Administrator "shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). In LINA's March 16, 2006, termination letter to Norris, LINA explained the reasons for the termination of benefits. The letter begins by reciting the Plan's definition of disability, and then specific medical evidence in the record used to conclude that Norris was no longer disabled. [Tr., pp. 334–35]. Although the letter does not mention Dr. Seiferth as being the doctor who evaluated her record, it goes on to state his conclusion that, "[a]ll medical on file was reviewed and current medical on file fails to reveal findings that support Dr. Skirp's [sic] restrictions of no work." [Tr., p. 335] The letter concludes by explaining that Norris can appeal this decision, and that she had a right to bring legal action regarding her claim pursuant to ERISA section 502(a). [*Id.*]

### B. Denial of First Appeal

Norris notified LINA by letter on July 30, 2006, that she intended to appeal its decision to termination her LTD benefits. [Tr., p. 277] Thereafter, Norris submitted additional documentation in order to support her assertion that she has "disabling problems with my back and feet, and that I have had these problems continuously." [*Id.*] These additional documents included: office notes and/or test results dated November 2004 to the present from McIntosh,

Skrip, and Howard; treatment plan (including meds, frequency of treatment, referrals, etc.); and restrictions and limitations that prevent(ed) Norris from returning to work. [Tr., p. 278–330] It should also be noted that while the appeal was pending Norris underwent a laparoscopic cholecystectomy.[5]

On appeal, LINA sought a peer review of Norris' medical records from Dr. Dan Gerstenblitt, a physician board certified in internal and occupational medicine. [Tr., pp. 262–66] Dr. Gerstenblitt thoroughly evaluated the medical evidence in the record, including medical evidence initially evaluated by Dr. Seiferth. Dr. Gerstenblitt also made the following findings regarding the additional documents submitted by Norris on appeal:

> On 3/31/06, despite numerous complaints [about her feet], the exam was normal. Carotid ultrasound was noted to have been negative on 3/22/06. On 4/20/06, cortisone injection and ultrasound again performed. The claimant was recommended for non-weight bearing.
>
> On 5/5/06, the claimant was "hurting everywhere today from the neck, upper back, and shoulders all the way into the lower back and right hip." The claimant had been taking care of a grandbaby during this time.
>
> On 5/9/06, the claimant was able to travel to the United Kingdom for a college graduation. On 5/15/06, the claimant indicated that she had to go to see her lawyer instead of going for medical care and had more pain.
>
> There were 3 [*Physical Capacity Evaluations*]. On 5/18/06, the claimant was unable to do essentially anything if one looked at this form. It is unclear to this reviewer what the claimant could be doing if she can't sit, stand, or walk for even an hour? There was really no basis for any of the restrictions on the forms and they appeared to be written strictly based on the subjective complaints of the claimant.

---

5. Laparoscopic gallbladder surgery (cholecystectomy) removes the gallbladder and gallstones through several small incisions in the abdomen. Additional information about this procedure can be found at, http://www.webmd.com/digestive-disorders/laparoscopic-gallbladder-surgery-for-gallstones.

[Tr., p. 264]

Based on his review of the entire medical record, Dr. Gerstenblitt then concluded, in relevant part, the following:

> No restrictions are supported such that the claimant could not return to her usual work in a light duty position from 3/5/06 to present. The claim is being driven strictly by the self-reports of the claimant combined with self-imposed limitations. The claimant may have treatment dependence that has developed upon her providers with the quick return of pain symptoms if [she] does not get treatments[,] and this could be reinforcing the claimant's pain complaints. Despite the claimant's subjective complaints, she still managed to have enough functional reserves to be able to go to the United Kingdom. The claimant also appears to have similar symptoms, yet worked with them and this is yet another reason she could not have gone back to work.[6]
>
> The claimant appears to have back complaints (and various other regions at different times – e.g., neck, shoulder) but there were no significant findings on examination. There was never any documentation for radiculopathy or any neurological deficits. MRI's of the hips and lumbar spine were normal (disc bulges are common in asymptomatic individuals and would not account for the claimant's subjective complaints) as were electrodiagnostic studies. The Office of Disability Guidelines (ODG) indicates that at most 35 days out of work would be anticipated for an intervertebral disc displacement (which the claimant did not even have) for manual labor and therefore one cannot account for the claimant needing any medical restrictions for simply subjective complaints of pain.
>
> The claimant also had complaints of plantar fasciitis [sic] and heel spurs which she had an excision for on 7/20/05. The ODG recommends a return to work, standing work, after 28 days for an excision of a heel spur. The Medical Disability Guidelines (MDA) recommends a return to work, very heavy work, by 42 days after plantar fasciotomy. The MDA recommends a maximum return to work, very heavy work, after excision of heel spurt by 56 days postoperatively. For light work, as is the claimant's job description, a return to work is expected by 14-21 days after this type of surgery.
>
> However, there would be a period of decreased functionality after laparoscopic cholecystectomy on 9/1/06. ODG recommends 14–21 days after this procedure

---

6. The final statement in the paragraph is confusing and seems to contradict the conclusion. No explanation for this discrepancy is found.

> prior to a return to any work. After an open gall bladder removal, the claimant still would have been back to work by 28 days (clerical/modified). While there is a period of decreased functionality after 9/1/06 due to this specific surgery, it still does not impact the overall claim determination which is that the claimant should have been able to work (outside of recovery for this surgery) from 3/5/06 going forward.

[Tr., pp. 264–65] (internal footnotes omitted).

Dr. Gerstenblitt ends his evaluation with a brief synopsis of his contact with the treating providers in order to discuss Norris' occupational functionality. [Tr., pp. 265–66] Dr. Gerstenblitt was unable to reach Dr. Skrip, but noted, in relevant part, the following regarding his discussion with Dr. Howard and McIntosh:

> On 10/3/06 at 11:30pm EDT made contact with Dr. Howard. The provider indicated that the claimant has had back problems for a long time. He indicated that the claimant has had sacroiliac joint swelling on exam and spasms and anything she does aggravates her pain. He indicated that the claimant was working with it and then the foot surgery may have made her back worse because she favors the feet. Functionally, the claimant used to go to car shows every week or two but now only goes once or twice a year. The provider mentioned that the claimant was going to Dr. Agatrab for pain management and injections but this reviewer did not see any records from this provider. In sum, the comments by this provider failed to change this reviewer'[s] opinion. The claimant did not have any significant findings on MRI or EMG and the neurological evaluation by Dr. Tikhtman also did not suggest any significant pathology and that her symptoms and self-imposed limitations were what was driving this claim.
>
> [On 10/3/06] [a]t 3:14pm EDT contact was made with Kim McIntosh, nurse practitioner. She indicated that the claimant was seeing Dr. Agatrab for pain management. She had a laparoscopic cholecystectomy on 9/1/06. When last seen on 9/22/06, the claimant had left elbow pain and was given an injection. Ms. McIntosh believed that the claimant's foot condition was improved and that the main problem was her back. However, she indicated that the claimant had seen a neurologist (Dr. Bean) and a neurosurgeon (Dr. Wheeler) and was not felt to be a surgical candidate. The provider agreed with this reviewer that their determinations were based strictly on the self-reports of the claimant.

[Tr., p. 265–66]

Based on Dr. Gerstenblitt's examination of the evidence in the medical record, on October 21, 2006, LINA notified Norris by letter that it would uphold its prior decision to deny her claim for LTD benefits. [Tr., pp. 258–61] The letter concluded by informing Norris that she could request a review of this decision, and that she had a right to bring legal action regarding her claim pursuant to ERISA section 502(a). [Tr., pp. 259–60]

### C. Denial of LTD Benefits on Second Appeal

On January 4, 2007, Norris once again notified LINA by letter of her intent to appeal its decision to terminate her LTD benefits. [Tr., p. 218] In her letter, Norris explained that "it has come to my attention, that you have not reviewed the entire case; I have received prior disability based on my back and also my feet." [*Id.*] In support this claim, Norris submitted additional documentation regarding recent MRIs as well as notes from Doctors Howard, Skrip, and Agratrap. [Tr., pp. 220–57]

On May 22, 2007, LINA notified Norris by letter that her second appeal for the reinstatement of her LTD benefits would also be denied. [Tr., pp. 205–07] The basis for this second denial was the evaluation of the medical record, including the newly submitted documents, conducted by Nurse Case Manager Rhea Valentino. [Tr., pp. 210–11] Valentino's conclusions were explained in the denial letter, in relevant part, as follows:

> Your claim was reviewed by our Nurse Case Manager. The Nurse Case Manager notes that your MRI of the lumbar spine shows mild bulging, consistent with minimal degenerative changes at the L5-S1 level. There were no significant findings such as a disc herniation or stenosis. The MRI of your bilateral hip was normal, as was the Nerve Conduction Velocity Studies on your upper extremities.

> Your heel spurs were excised with the left performed on July 20, 2005 and the right performed on November 10, 2005. No post operative complications are noted in Dr. Skrip's records. The medical records do not document further abnormalities with your feet precluding you from working as of March 6, 2006. Although you are seen for pain management consultation by Dr. Agrarap [sic] on March 30, 2006, at that time your gait is normal. No deformities are noted in your spine at the cervical, thoracic, or lumbar levels. Range of motion of the cervical spine is unlimited and the range of motion of the thoracic spine is fully maintained. Although spasm and tenderness from L1 to L5 are noted, the significance of this finding is in question, given minimal diagnostic findings. The Nurse Case Manager concluded that the medical information does not support restrictions to preclude light work based upon either your condition of your low [sic] back or feet.

[Tr., p. 206] The letter concluded by explaining that Norris had exhausted her administrative remedies, and therefore she had no further right to appeal the decision to LINA. [*Id.*] The letter also explained that Norris still had the right to bring legal action regarding her claim pursuant to ERISA section 502(a). [*Id.*]

### D.     Norris' ERISA Claim

On August 7, 2007, Norris filed this action alleging ERISA violations against LINA. [Record No. 1] In her brief, Norris makes general assertions that the "medical evidence in the record overwhelmingly supports the finding that the Plaintiff continues to be unable to perform the duties of her occupation," and that "[g]iven the weight of evidence to the contrary, the findings of the Defendant in this claim are without reasonable basis and therefore arbitrary and capricious." [Record No. 18, p. 3–4] Despite these assertions, her four-page brief does not contain a single citation to the administrative record, nor does it cite any authority in support of her position.

LINA properly evaluated the medical opinions of Norris' treating physicians, and ultimately concluded that the medical evidence did not support the restrictions and limitations that Norris could not work. This same conclusion was reached by Dr. Seiferth, Dr. Gerstenblitt, and Nurse Case Manager Valentino. Unlike Social Security disputes, the Administrator is not required to extend any special deference to the opinion of treating physicians in ERISA disputes. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). In *Black & Decker Disability Plan*, the Supreme Court further held that courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.*

Under the arbitrary and capricious standard of review, a particular decision must be upheld if the decision was "the result of a deliberative, principled reasoning process and if it is supported by substantial evidence." *Glenn*, 461 F.3d at 666. Based on the Court's review of the administrative record, LINA's decision to terminate, and subsequently deny on appeal, Norris' LTD benefits was reached as the result of a reasoned, deliberative process. Thus, the Court will grant LINA's motion for judgment on its counterclaim.

### IV. CONCLUSION

LINA's determination that Norris no longer qualified for LTD benefits after March 5, 2006, was not arbitrary and capricious. Instead it is supported by substantial evidence. Accordingly, it is hereby:

**ORDERED** as follows:

(1) Norris' motion for judgment [Record No. 18] is **DENIED**;

(2)      LINA's motion for judgment on its counterclaim [Record No. 21] is **GRANTED**;

(3)      The decision of LINA is **AFFIRMED**.

This 7th day of October, 2008.

Signed By:
*Danny C. Reeves* DCR
United States District Judge